IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re STERLING HEALTHCARE, Inc. | : | |
| | : | |
| | : | |
| | : | |
| v. | : | Civil No. CCB-04-2685 |
| | : | |
| | : | Bankr. Case 02-6-7584 (SD) |
| | : | |
| THE PAPPG GRANTOR TRUST *et al.* | : | |
| | : | |

## MEMORANDUM

The debtors involved in this case, a group of approximately 240 privately owned entities "that provide staffing to hospital emergency rooms through the United States," filed for chapter 11 bankruptcy. (Appellees' Brief at 3). The Official Committee of Tort Claimants ("Tort Committee") was appointed to accept bids for the sale of the debtors' assets and an auction was held on November 11, 2003. At the conclusion of the auction, the parties could not agree which bid was the best. As a result, the Bankruptcy Court conducted a hearing to determine the winning bid. The winning bid was to be chosen based upon both quantitative and qualitative factors. Ultimately, R.D. PhyAm Acquisition Corporation's (now known as Sterling) bid was selected by the Bankruptcy Court, which approved Sterling's acquisition of the debtors' assets pursuant to the Asset Purchase Agreement ("APA").

Section 2.13 of the APA, entitled Provisions Applicable to Medical Malpractice Claims and Insurance, provides:

> Effective upon the Closing and subject to the terms, conditions and limitations of the Plan and the Plan ADR, [Sterling] agrees to assume all medical malpractice liabilities of Sellers'

1

>contracted and employed physicians and other clinical providers who provide medical services in connection with the Acquired Assets, all in respect of claims relating to acts, events or omissions occurring prior to the Petition Date (the "Pre-Petition Medical Malpractice Liabilities"), and either to assume and agree to fund in accordance with their terms the insurance policies of the Sellers that provide insurance coverage with respect to the Pre-Petition Medical Malpractice Liabilities or to procure alternative replacement policies, so that the Pre-Petition Medical Malpractice Liabilities can be liquidated and satisfied pursuant to the Plan and the Plan ADR.  Also effective upon closing, [Sterling] agrees to assume medical malpractice liabilities of Sellers' contracted and employed physicians and other clinical providers who provide medical services in connection with the Acquired Assets, all in respect of claims relating to acts, events or omissions occurring from and after the Petition Date through and including the Closing Date (the "Post-Petition Medical Malpractice Liabilities"), and either to assume the related insurance policies of Sellers or to procure alternative or replacement policies and further, from and after the expiration of any existing insurance policies with respect to Post-Petition Medical Malpractice Liabilities, [Sterling] agrees to procure replacement policies on terms and conditions acceptable to [Sterling] in its sole discretion that provide continued insurance coverage for the Post-Petition Medical Malpractice Liabilities with respect to claims made under such policies at any time on or prior to December 31, 2007.

(Case No. 02-6-7584, Docket No. 2306 Ex. 14).

Subsequent to the hearing, a dispute arose regarding what liabilities Sterling agreed to assume in the APA.  Sterling argued that under the terms of the APA, it only agreed to assume liabilities in connection with the acquired assets and that it was not responsible for the insurance liabilities for debtors whose assets it did not acquire, referred to by Sterling as terminated locations.  (Appellant's Brief at 8).  In response, the appellees argued that Sterling was obligated to provide adequate pre and post-petition medical malpractice insurance for all of the debtors and that Sterling's obligations were not limited to the liabilities of those debtors whose assets Sterling acquired.  (Appellees' Brief at 19-21).

In May 2004, the Tort Committee, joined by PAPPG Grantor Trust ("Plan Trust"), filed an Emergency Motion to Compel Sterling to assume the liabilities of all the debtors, including the

terminated locations. Sterling opposed this motion and agreed to have the dispute resolved by summary disposition. Following a hearing, Judge Derby of the U.S. Bankruptcy Court granted the appellees' emergency motion on July 20, 2004, and issued an order requiring Sterling to assume the medical malpractice liabilities and fund or replace the malpractice insurance policies for all of the debtors, irrespective of whether Sterling acquired that debtor's assets. (Case No. 02-6-7584, Docket Nos. 2336, 3332).[1]

The issue currently before the court is the same issue that was presented before the Bankruptcy Court. Namely, "was Sterling obligated to provide medical malpractice insurance coverage for claims arising pre and post-petition on account of all Debtors who were Sellers, regardless of whether Sterling assumed a hospital contract on account of that Debtor?"[2] (Appellees' Brief at 19-20).

The Bankruptcy Court's findings of fact are reviewed under the clearly erroneous standard and conclusions of law are reviewed *de novo*. *Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Properties Ltd. Partnership),* 99 F.3d 151, 154 (4th Cir. 1996). Under Delaware law, which is applicable to the current dispute, "'the starting point of contract construction is to determine whether a provision is ambiguous.' Whether a contract is ambiguous is a question of law determined by the court."[3] *NVF Co. v. New Castle County*, 276 B.R. 340, 350 (D. Del. 2002)

---

[1] All exhibits cited are hereby made part of the Record in this appeal.

[2] Similarly, the Bankruptcy Court defined the issue as: "what are the obligations of the purchaser with respect to malpractice claims under the contract of sale, the asset purchase agreement by the debtors and the purchaser." (Case No. 02-6-7584, Docket No. 2306 at 85).

[3] Under Delaware law, "[a] contract is not rendered ambiguous simply because the parties do not agree upon its proper construction. Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more

3

(internal citations omitted). Judge Derby concluded the language contained in the APA is unambiguous. *See* Case No. 02-6-7584, Docket No. 2306 at 87-90. Consequently, a *de novo* standard of review will be applied.[4]

I agree that the unambiguous language of the APA indicates that Sterling's obligations are not limited strictly to the acquired assets. The APA establishes that Sterling has two separate obligations with respect to pre and post-petition liabilities. With respect to pre-petition liabilities, the APA first states that Sterling "agree[d] to assume all medical malpractice liabilities of Sellers' contracted and employed physicians and other clinical providers who provide medical services in connection with the Acquired Assets." (Case No. 02-6-7584, Docket No. 2306 Ex. 14). Sterling's obligations under this portion of the APA are clearly limited to acquired assets. The latter portion of the sentence,[5] however, states that Sterling agreed "either to assume and agree to fund in accordance with their terms the insurance policies of Sellers that provide insurance coverage with respect to the Pre-Petition Medical Malpractice Liabilities or to procure alternative or replacement policies, so that Pre-Petition Medical Malpractice Liabilities can be liquidated and satisfied pursuant to the Plan and the Plan ADR." (Case

---

different meanings." *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992).

[4]There is some factual dispute regarding the representations made by Sterling and Sterling's conduct at the Bankruptcy hearing prior to acceptance of Sterling's winning bid. *Compare* Appellant's Brief at 3-5, 12-14 *with* Appellees' Brief at 5-12, 28-29. Because the language of the APA is unambiguous, however, consideration of such extrinsic evidence is unnecessary. *See Eagle Industries, Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) (stating "[i]f a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity").

[5]In between these two clauses is a separate clause that defines the time period covered by the term "Pre-Petition." These three clauses also are separated by commas.

No. 02-6-7584, Docket No. 2306 Ex. 14).  The term acquired assets is only contained in the sentence's first clause and does not modify the latter clause.  The latter clause creates a separate responsibility that is not limited to acquired assets; it applies to all of the debtors' pre-petition medical malpractice liabilities.[6]  *See generally New Castle County, Delaware v. Nat'l Union Fire Isn. Co. of Pittsburgh, Pa.*, 174 F.3d 338, 347-48 (3rd Cir. 1999) (discussing the grammatical construction of contracts under Delaware law).  The APA contains similar language with respect to Sterling's obligations towards post-petition medical malpractice liabilities.  Consequently, like its pre-petition obligations, Sterling's post-petition obligations are not limited to acquired assets.[7]  *See also* Case No. 02-6-7584, Docket No. 2306 at 89.

Additionally, Sterling argues that the Bankruptcy Court erred by ruling on matters not before it.  Specifically, Sterling argues that the Emergency Motion only related to "the assumption and funding of medical malpractice liabilities" and not "the assumption of obligations to the Debtors' physicians and

---

[6]This result is consistent with Judge Derby's interpretation of the APA and his understanding of Sterling's bid, which he approved.  Judge Derby stated:
> When the Court approved the sale after hearings... the Court concluded that the competing offers were the same as to this component of the purchase price that each was proposing, and the terms, as the Court understood them, were that the purchaser would assume the debtors' existing malpractice insurance policies; that they would purchase insurance tails on those policies that were co-extensive with the policies and that they would resolve the amounts of claims through the ADR process.

(Case No. 02-6-7584, Docket No. 2306 at 85).  Judge Derby next stated:
> One question the court asked itself in analyzing the terms of the [APA] is whether it managed, inadvertently, to approve a contract whose terms differed from the Court's understand[ing] of the purchaser's bid that it had approved as a result of the series of hearings to which I referred earlier.  The Court concludes that it did not.

(Case No. 02-6-7584, Docket No. 2306 at 86-87).

[7]Because it is clear that Sterling's obligations are not limited to acquired assets, there is no need to examine the APA's definition of acquired assets, as Sterling argues.

5

other clinical providers." (Appellant's Brief at 14). This argument is without merit. Judge Derby's order did not expand Sterling's obligations or address a matter not before his court. Instead, Judge Derby's order merely restated the language of the APA[8] so that it would be consistent with his ruling that Sterling's obligations were not limited to acquired assets.

For the reasons stated above, the Bankruptcy Court's decision is affirmed and Sterling's appeal is denied.[9]

A separate Order follows.

    July 20, 2005                                                                     /s/
        Date                                                            Catherine C. Blake
                                                                   United States District Judge

---

[8] As noted by the Appellees, "[t]he only difference between the language of the Insurance Order and the language of the APA is that the insurance order replaces the phrase 'in connection with the Acquired Assets' with the phrase 'or all Debtors identified as Sellers in the APAs, irrespective of whether Sterling assumed the hospital contracts of such Sellers.'" (Appellees' Brief at 37-38). This change was made to reflect Judge Derby's primary holding that Sterling's liability was not limited to acquired assets.

[9] The appellees have advanced an alternative argument: that Sterling should be estopped from denying its obligation to assume all of the debtors' liabilities based on its earlier representations and conduct. *See* Appellees' Brief at 29-37. This issue is directly related to the parties' dispute regarding Sterling's conduct and representations during the bidding process. Because Judge Derby's decision is affirmed, however, this decision expresses no opinion on the merits of the appellees' estoppel arguments.